THE STATE ex rel. BARTH C. SLATTERY v. WILLIAM A. RAUPP, Adjutant-General of Missouri.

In Banc, May 19, 1924.

BONUS: Army Field Clerk: Soldier. Under the amendment to the Constitution of August 2, 1921, empowering the General Assembly to authorize the payment of a bonus to each bona-fide resident who served honorably in the military or naval service of the United States, and the Act of November 11, 1921 (Laws 1921, 2nd Ex. Sess. p. 6), declaring that the word "soldier" shall be construed to mean and include "any officer, soldier, sailor, marine, nurse, or other person who was regularly commissioned, enlisted or inducted into the military (or naval) service of the United States and who served in the military or naval forces of the United States in the war with Germany and her allies," an Army field clerk, appointed by the Secretary of War and assigned to duty in the department of the Adjutant General in the Headquarters of the First Army, being subject to the articles of war and given a military status and considered by the Government as being "in and of the Army," and being not expressly excluded by said act,

was "inducted" into the military service and must be considered a "soldier" within the meaning of said act and said amendment, and entitled to a soldier's bonus.

Headnote 1:   Bounties, 9 C. J. sec. 311 (1926 Anno).

## Mandamus.

ALTERNATE WRIT MADE PEREMPTORY.

*D. W: Peters* for relator.

*Jesse W. Barrett,* Attorney-General, *Stratton Shartel* and *Robert W. Otto,* Assistant Attorneys-General, for respondent.

JAMES T. BLAIR, J.—The purpose of this proceeding is to compel the allowance of relator's claim under the Amendment of August 2, 1921, and the Act of November 11, 1921, Session Laws 1921, Second Special Session, page 6.

Counsel stipulate, among other things, that relator "was appointed from civil life as an Army field clerk by the Secretary of War on the 20th day of June, 1918, and was thereafter assigned to duty in the Department of the Adjutant General in the Headquarters of the First Army, from August 11, 1918, until May 15, 1919, and at General Headquarters from May 15, 1919, until his honorable discharge on July 17, 1919; that during all said time he served as such in the military forces of the United States in the war with Germany and her allies; that he was a bona-fide resident and citizen of Missouri for more than one whole year next before the 6th day of April, 1917; . . . that relator made application in due form for the payment of this bonus within the time prescribed by law, to-wit, on April 25, 1922, and filed said application with the Missouri Soldier Bonus Commission;" that the commission and the board of review on appeal have disallowed relator's claim; "that if relator is entitled to the payment of a bonus under the law, he is entitled to the payment from June 20, 1918, to June 17, 1919, inclusive;

that the Missouri Soldier Bonus Commission has expired by limitation of law, and that the duties formerly performed by it now devolve upon William A. Raupp as Adjutant General of Missouri.''

The single question which counsel present is whether Army field clerks are within the class described by the law as entitled to payment out of the fund created by the Amendment of August 2, 1921.

In the Amendment (Laws 1921, First Extra Session, pp. 197, 198) it is provided that the ''General Assembly shall have power, for the purpose of paying to each bona-fide resident of the State of Missouri who served honorably in the military or naval forces of the United States of America at any time between'' April 6, 1917, and November 11, 1918, ''a bonus of ten dollars per month . . . to contract . . . a debt,'' etc.

The amendment further provides that ''the Legislature shall enact such laws as may be necessary to carry into effect this amendment. The wife or husband, child, mother or father, in the order named, and none other, of any deceased resident who served honorably in the military or naval forces, as provided in this section, shall be paid the sum or allowance that such deceased resident would be entitled to receive hereunder if such deceased resident had lived; . . . and, provided, that no person shall be entitled to receive the bonus herein provided, who, being in the military or naval service of the United States of America subsequent to'' April 6, 1917, ''refused on conscientious, political or other grounds to subject himself to military discipline or to render unqualified service; and, provided further, that no person shall be entitled to receive the bonus herein provided he was not a bona-fide resident of the State of Missouri at least during the twelve months prior to'' April 6, 1917, ''or who has received a state bonus from any other state in the Union.''

Section 2 of the Act of November 11, 1921, reads as follows:

"Sec. 2.   *Construing and defining word 'soldier.'*
The word 'soldier' as used in this act shall be construed
to mean and include any officer, soldier, sailor, marine,
nurse, or other person, who was regularly commissioned,
enlisted or inducted into the military (or naval) service
of the United States, and who served in the military or
naval forces of the United States in the war with Ger-
many and her allies:   Provided, that the word 'soldier'
shall not be construed to mean or include persons who
served as students in school or college training corps,
who, in addition to military training, received some gen-
eral educational instruction, unless such person shall
have also had service of other character in the military or
naval service of the United States, and then the time so
spent as students in such school or college training corps
shall be counted in computing service under this act:
Provided further, that the word 'soldier' shall not be
construed to mean persons who, not being otherwise duly
commissioned, enlisted or inducted in the military or
naval service of the United States, served only as stu-
dents in student officers' training camps, but the time so
served as students in student officers' training camps
shall be included in computing the service of persons who
served therein and who thereafter performed other serv-
ice in the military or naval service in the United States:
Provided further, that persons who were regularly com-
missioned, enlisted or inducted into the military or naval
service of the United States, and who served all or a part
of their service in the United States guards shall be
deemed soldiers within the meaning of this act:   Pro-
vided further, that persons who were regularly commis-
sioned or enlisted in the regular army, navy or marine
corps of the United States prior to April 6, 1917, and
were serving under such commission or enlistment at
that date and who, at the commencement of such com-
mission or enlistment, were residents of the State of Mis-
souri and had not established a legal residence in another
state, shall, for the purpose of this act, be deemed to be
residents of the State of Missouri from the date of such

commission or enlistment to April 6, 1917; and be it further provided, that the word 'soldier' shall not be deemed to include welfare workers or persons engaged in the work of the Red Cross, Young Men's Christian Association, Young Women's Christian Association, Jewish Welfare, Knights of Columbus, Welfare Board, War Camp Community Service, Salvation Army, or like organizations.''

Section 1 of the same act contains provisions excluding those excluded by the constitutional provision and, also, those ''who shall have been at any time guilty of any fraud or wilful violation or evasion of the 'Selective Service Act' or of the rules and regulations of the War Department in force thereunder.''

It is apparent relator is not within any class specifically excluded from the benefits of the act, and it is not contended that he is. The question is whether he is included in the word ''soldier'' as used in the act. The act defines that word to mean and include ''any officer, soldier, sailor, marine, nurse, *or other person,* who was regularly commissioned, enlisted or inducted into the military (or naval) forces of the United States in the war with Germany and her allies'' with the exceptions specified. The relator was not commissioned or enlisted in the military forces, in the technical sense, but was appointed by the Secretary of War. The word ''inducted,'' as used in the act, has not been defined in any case cited or listed in Words and Phrases in either edition, or which appears under that heading in the annual or monthly digests which supplement these works. In Webster's New International Dictionary the word induct is defined: ''1. To introduce, as to a benefit or office; to put in actual possession of the temporal rights of an ecclesiastical living, or any other office, with the customary forms and ceremonies; to install; usher. 2. To lead or conduct (Rare). 3. To bring in; to introduce; hence, to initiate.'' In the New Standard Dictionary to ''induct'' is defined: ''To put in enjoyment or possession; especially to introduce into possession of an office or benefice, with the customary

ceremonies; to install. 2. To bring in; initiate." In the Century Dictionary the definition is: "1. To introduce, initiate. 2. To introduce, especially into an office or employment; put formally in possession; inaugurate or install." The word "install" is defined: "To place in a seat, give a place to. To set, place or instate in an office, rank or order: To establish in a place or position; to set in a seat; give a place to; to establish (one) in a place." From these definitions it seems a reasonable construction of the act that it was intended that all persons, except those classes specifically excluded, who were in the military or naval service during the late war and were otherwise qualified, should be entitled to the benefits given by the act. This view is strengthened by the generality of the language in the act and the fair implication that the Legislature framed the act so as to point out all excluded classes by specific provisions. The question to be decided, therefore, then becomes this: Was relator, as an Army field clerk, in the military service of the United States? This is answered by discovering the status of Army field clerks under the Federal law and Army regulations. Army field clerks were formerly "headquarters' clerks." The Attorney General (Vol. 31, Ops. Atty. Genl. of the United States, l. c. 136 et seq.) in an opinion rendered June 21, 1917, held that the duties of Army field clerks "involve substantially military functions;" that the Act of August 29, 1916 (39 Stat. 625) recognizes "that Army field clerks would necessarily attain a military status from the date of their appointment and hence be subject at once to the rules and articles of war and without the purview of the rules and regulations of the Civil Service Commission." The act referred to expressly made Army field clerks subject to the articles of war. It has long been held by the Judge Advocate General that the act which made them subject to the articles of war, gave Army field clerks a military status "which operated to remove them from the civil service to the military service" and it was so held by the Comptroller of the Treasury. [J. A. O. 6-135, 16-020.] The provision of

the Act of August 29, 1916, which was so construed, was enacted in compliance with a request from the War Department that the act be framed so as to change the status of headquarters' clerks "from a civil to a military one and subject them to the rules and articles of war." The Comptroller of the Treasury quotes an opinion of the Judge Advocate General: "While it is true that Army field clerks belong to an anomalous class who are neither commissioned officers nor enlisted men, still they are in and of the Army; their service is 'military service;' they are 'regularly in service of the Army;' they are subject to the Articles of War, both in peace and in war." In a memo from the Adjutant General's office, April 22, 1918, amended, based upon opinions of the Judge Advocate General, already referred to, it is said: "It is settled that under the Act of August 29, 1916 (35 Stat. 625), creating the position of Army field clerks, . . . occupants of those positions have a military status, and that as they are appointed to office by the Secretary of War, they are officers in the military service, although not commissioned officers. The Commissioner of Pensions (Bulletin No. 26, W. D. May 7, 1917) held that one in civil life who drew a pension and who took appointment from the Secretary of War as a field clerk, by that act passed into the military service and his pension ceased during his service as such clerk."

From these things it seems that the several Federal departments most concerned with the question concerning the status of Army field clerks have unanimously held that they are "in and of the Army." Under the language of our statute the manner of their getting in is not important. The fact that they *are* in is testified to by those officers of the Government whose opinions have been quoted and whose departments are required to pass upon questions of the kind in the transaction of their daily business. The opinion of the Attorney-General is entitled to weight. The Act of November 11, 1921, does not indicate there was any intent it should be held to a construction which would narrow the plain meaning of its

words. Under the opinions quoted relator was in the military service, was "in and of the Army," and under our act is, therefore, entitled to participate in the benefits of the Act of November 11, 1921.

The alternative writ is made peremptory. All concur.